**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TERRY L. MACKINDER,**

    **Plaintiff,**

vs.                                                              Case No.: 8:11-CV-2777-T-17EAJ

**MICHAEL J. ASTRUE,
Commissioner of Social
Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be affirmed and this case be dismissed.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

---

[1] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I. Background**

On January 13, 2004, Plaintiff filed an application for DIB and SSI, alleging disability beginning June 7, 2003. (T 59)  Plaintiff's applications were denied initially and on reconsideration, and a hearing was held on September 11, 2006.  (T 18, 44)  On January 17, 2007, an ALJ found Plaintiff disabled as of March 30, 2006, but denied Plaintiff's application for the time period of June 7, 2003 through March 30, 2006.  (T 18, 646-57) On July 10, 2008, the Appeals Council remanded the case to an ALJ, and a supplemental administrative hearing was held on December 15, 2008 (T 658-63, 707-726) Forty-nine years old as of March 30, 2006, Plaintiff has a twelfth-grade education and past relevant work experience as a dishwasher, forklift driver, and metal bundler. (T 29A, 59, 66-67, 70, 74, 91-98)

On January 28, 2009, an ALJ found Plaintiff not disabled during the relevant period from June 7, 2003 to March 30, 2006. (T 15-31)   Although Plaintiff's severe impairments included substance abuse, personality disorder, depression, osteoarthritis of the lumbo-sacral spine and limbs

(degenerative disc disease ("DDD") and degenerative joint disease ("DJD")), these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 21-22)  Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") for a wide range of light work except for occasional unusual postures, including crouching, crawling, kneeling, balancing, and unprotected heights. (T 24) Plaintiff could lift and carry ten pounds frequently, twenty pounds occasionally, and sit, stand, and walk six hours in an eight hour workday.  (Id.) The ALJ found that Plaintiff had no limitations in his ability to push and pull with hand or foot controls and had no manipulative, visual, communicative, or environmental limitations. (Id.)  Additionally, Plaintiff could hear, understand, remember, and carry out simple and complex work instructions, had a rare loss of attention and concentration or pace, and a moderate impediment in social functioning "not readily translated to limitations in employability." (Id.)

Although Plaintiff was unable to perform any past relevant work as a dishwasher, forklift driver, and metal bundler, the ALJ found Plaintiff capable of performing jobs available in significant numbers in the national economy, such as a mail clerk, toll taker, small products bench assembly worker, scale attendant, and telephone information or order clerk. (T 29A-30) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period.  (T 31)  On December 5, 2011, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (T 9)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Plaintiff claims that the ALJ erred in discrediting Plaintiff's testimony and determining Plaintiff's RFC. (Dkt. 15 at 3) The Commissioner asserts that substantial evidence supports the

3

ALJ's decision that Plaintiff is not disabled. (Dkt. 16 at 3)

**A.     Plaintiff's Credibility**

Plaintiff argues that the ALJ improperly assessed his subjective complaints of pain and other symptoms and substantial evidence does not support that Plaintiff's complaints are not fully credible.

The Eleventh Circuit has established a three-part "pain standard" to use when a claimant attempts to establish disability through testimony of pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). Where an ALJ declines to credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

Evaluating Plaintiff's subjective complaints under this standard, the ALJ properly determined that Plaintiff's testimony was not entirely credible because Plaintiff's complaints were inconsistent with the medical evidence and his medication regimen, his statements about his medical history were inconsistent, and the other evidence of record, including his demeanor at the hearing and the absence of lay witnesses to support his testimony. (T 29)     Although Plaintiff argues that the ALJ's credibility assessment uses boilerplate language, a review of the ALJ's decision shows that she

4

properly evaluated Plaintiff's complaints. (Id.)[2] The summary statement that Plaintiff points to is simply that. The ALJ specifically identified the evidence supporting that assessment in the following page of the decision.

The ALJ discussed Plaintiff's alleged symptoms of "radiating sharp 10/10 backache down the legs, knee pains hampering movement, fatigue, headaches, and sad mood, with impaired attention." (Id.) The ALJ noted that these symptoms were aggravated by staying in one seated position, exertion and stress, respectively, and improved by lying down, changing positions, rest and medications. (Id.) For treatment, Plaintiff took Ultram, Lasix, Motrin and Flexoril, among other medications, and underwent epidural blocks in 2003 through 2006. (Id.)

After throughly discussing the medical evidence, the ALJ found Plaintiff's claimed memory loss unsupported. Among other reasons, Plaintiff was inconsistent as to his liquor use because he denied such use for fifteen to twenty years, but the record revealed indications of "ethanolism." (Id.) Plaintiff admitted to periods of remission, including reporting to Geo Haidukewych, M.D. ("Dr. Haidukewych") on November 8, 2005 that his left knee was doing a bit better. (T 29, 532) The ALJ observed that some physicians noted discrepancies such as that Plaintiff appeared in no acute distress and his complaints did not match the limited observations. (T 29) By August 2005, Erick Grana, M.D. ("Dr. Grana") remarked that Plaintiff's pain was well-controlled with Motrin/Flexeril

---

[2] Plaintiff refers to the following statement in the ALJ's decision:

> After careful consideration of all the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to have caused some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms during the period in issue were not credible to the extent they were inconsistent with the above residual functional capacity assessment during the relevant time frame.

(T 28)

5

and discontinued his prescription for Ultram. (T 29, 543)

Additionally, Plaintiff did not always cooperate with treatment by failing to forego narcotics, losing weight, and stopping tobacco. (Id.) The relevant time period was "a relatively quiescent one for treatment, with little or no need for post-operative recovery, since he did not have the major artificial joint implanted until several months after the [established onset date]," "[a] morphine pump or transnueronal stimulation," or "take ergot, Imitrex, the new combination drug or headache clinic therapy." (Id.) Commenting on Plaintiff's prison history in 2004 and early 2006, the ALJ observed that his drug crimes seemed "more pre-meditated than impulsive," and he seemed capable of criminal activity and surviving in the stressful, physically demanding "penal milieu" without apparent decompensation. (Id.)

Further, the ALJ also found inconsistencies between Plaintiff's appearance and demeanor at the hearing and Plaintiff's testimony regarding his alleged mental or physical limitations, stating:

> [Plaintiff] did not appear to have problems with memory, attention or concentration during the hearing in that he was able to testify at length regarding his alleged symptoms, limitations and activities of daily living. He responded appropriately to all questions asked of him by his attorney, and did not appear to be in any apparent distress. He seemed to exaggerate his pains, since 10/10, the highest on the scale, indicates to medical personnel unendurable agony. In the undersigned's experience, such designation of the worse possible pain indicates less than exact or measured assessment of one's own distress, and possible self-serving bias must be considered. Even during the conceded disability period, the claimant did not appear in gross mental/physical stress at the hearing, insofar as lay observation could indicate.

(Id.)

Although the ALJ is precluded, as Plaintiff notes, from engaging in "sit and squirm jurisprudence," the ALJ did not solely rely on Plaintiff's demeanor in the credibility assessment. The Commissioner may consider the claimant's appearance and demeanor during the hearing, among other criteria, in making credibility determinations, so long as he does not use his

observations to reject objective medical evidence. Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985). Here, Plaintiff's demeanor at the hearing was only part of the evidence cited by the ALJ in concluding that Plaintiff's allegations as to disabling pain and other subjective symptoms was not fully credible.

Similarly, the ALJ's references to Plaintiff's criminal history and the absence of lay witness testimony do not provide a basis for remand as the ALJ did not discredit Plaintiff's testimony because of these factors alone, but found him not credible based on the multiple discrepancies in the record which are supported by substantial evidence. (T 29) Additionally, it is not error for the ALJ to consider a claimant's criminal history in assessing his credibility. See Douglas v. Comm'r of Soc. Sec., No. 12-10055, 2012 WL 3205473, at *2 (11th Cir. Aug. 7, 2012) (unpublished) (affirming the ALJ's credibility evaluation where the ALJ considered the claimant's drug use and extensive criminal record).[3]

As there is substantial evidence to support the ALJ's credibility determination, this Court affirms the ALJ's finding on this issue. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

## II.   RFC Assessment

Plaintiff contends that the ALJ failed to include limitations in the RFC assessment resulting from Plaintiff's mental impairments regarding "intellectual functioning, concentrating, focusing, following instructions, and performing detailed tasks." (Dkt. 15 at 7)

The relevant medical evidence reveals that Monty Snead, Ph.D. ("Dr. Snead") performed a

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

psychological evaluation on May 30, 2000. (T 260-68) Plaintiff admitted to a history of substance abuse including use of marijuana, methamphetamine, and "crack." (T 261) On the Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III"), Plaintiff obtained a verbal IQ score of 78, a performance IQ score of 79, and a full scale IQ score of 77, placing him in the borderline range. (T 262) Dr. Snead opined that individuals with Plaintiff's level of intellectual ability usually function in unskilled and semi-skilled occupations. (T 267) Due to mood difficulties and potential for drug use relapse, Dr. Snead noted that Plaintiff could have difficulty concentrating and focusing on tasks. (Id.) Dr. Snead diagnosed Plaintiff with polysubstance dependance in remission, depression disorder, borderline intellectual functioning, and a GAF score of 55.[4] (T 266)

From September 2001 through February 2004, Plaintiff received psychiatric treatment from Hafiz Rahman, M.D. ("Dr. Rahman") who diagnosed Plaintiff with major depression and antisocial personality disorder and prescribed medication. (T 269-77) On February 3, 2004, Carol Deatrick, Ph.D. ("Dr. Deatrick") a non-examining psychologist, found that Plaintiff had a non-severe mental impairment, no restrictions in performing daily living activities, mild limitations in maintaining social functioning, mild limitations in maintaining concentration, persistence, and pace, and no episodes of decompensation. (T 297-310) Another non-examining psychologist, Michael R. Stevens, Ph.D. ("Dr. Stevens") concluded on May 3, 2004 that Plaintiff had no severe mental impairments, no restrictions in performing daily living activities, mild limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, and pace, and

---

[4] GAF is a standard measurement of an individual's overall functioning level with respect to "psychological, social, and occupational functioning." American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994). A GAF of 51-60 indicates either "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 32 (4th ed. text rev. 2000).

no episodes of decompensation. (T 279-96)

At the December 15, 2008 administrative hearing, David Kazar, ("Dr. Kazar") a clinical psychologist, testified as a non-examining medical expert. (T 707, 711-15)   Plaintiff's medical history during the relevant period included cocaine abuse, marijuana abuse, personality disorder, and depression. (T 712)  Dr. Kazar opined that Plaintiff had "slight" limitations in activities of daily living, "moderate" limitations in maintaining social functioning, but "seldom" had limitations in concentration, persistence or pace. (T 712-13)

Although Plaintiff's severe impairments included substance abuse, personality disorder, and depression, the ALJ's determined that Plaintiff had no manipulative, visual, communicative or environmental limitations, could hear, understand, remember, and carry out both simple and complex work instructions, and had no significant psychological limitations other than a rare loss of attention, concentration, and pace.  (T 24)  Plaintiff also had a "moderate impediment in social functioning not readily translated to limitations in employability." (Id.)  The ALJ found Plaintiff's concentration "deficient," but noted that Dr. Snead did not consider Plaintiff's attention deficits "to be gross in nature." (T 23)

The ALJ properly evaluated the medical evidence of record and the opinions of the medical experts in formulating Plaintiff's RFC assessment and accounting for Plaintiff's mental limitations. As substantial evidence supports the ALJ's RFC determination, the Court cannot reweigh the evidence to reach a contrary conclusion. See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (citation omitted).  Accordingly, remand on this issue is unwarranted.

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles.  The

9

decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)    The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)    The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).


**Date: January 16, 2013.**

                                                                    _____
                                                                    ELIZABETH A JENKINS
                                                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).